UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RAYMOND L. JACKSON,

                                Plaintiff,

    v.                                                   1:20-CV-110
                                                                (MAD/ATB)

LT. COL. SCOTT A. WILCOX, et al.,

                                Defendants.

RAYMOND L. JACKSON, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by pro se plaintiff Raymond L. Jackson. (Dkt. No. 1 ("Compl.")). On February 3, 2020, the court administratively closed this action because plaintiff failed to comply with the filing fee requirements of 28 U.S.C. § 1915. (Dkt. No. 2). On February 12, 2020, plaintiff submitted a motion to proceed in forma pauperis ("IFP"), together with a properly completed Inmate Authorization Form, and a motion for appointment of counsel. (Dkt. Nos. 3-5). The Clerk re-opened this action and has sent it to me for initial review. (Dkt. No. 6).

**I.    IFP Application**

As to plaintiff's IFP application, the court finds that plaintiff has demonstrated sufficient economic need, and he has filed the appropriate forms. Therefore, plaintiff has met the financial criteria for proceeding IFP.

However, in addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the

complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. **Complaint**

This complaint involves "exculpatory" evidence that the defendants are allegedly trying to keep away from the plaintiff. (Complaint ("Compl.") *generally.* (Dkt. No. 1). Plaintiff claims that he has made a Freedom of Information Law ("FOIL") request under New York State law, and the defendants have all failed to properly respond to his request. He believes that the withheld materials constitute *Brady*[1] material which will help to overturn his conviction. *Id.*

Plaintiff alleges that defendant Timothy Connolly was the "lead" investigator in petitioner's criminal case, and he apparently took pictures of the drugs that formed the basis of plaintiff's criminal prosecution. (Compl. at 4). Plaintiff states that defendant Connolly claims to have taken the photographs on particular dates,[2] but that "plaintiff never received any records of a jpeg [sic] file" showing a "Time Stamp" on the images. (Compl. at CM/ECF p.5).[3]

Plaintiff states he was previously given a JPEG file containing images that were taken of the "drug evidence" that was removed from plaintiff's vehicle, but nothing "pertaining to the criminal sales." (Compl. at 5). Plaintiff states that he made a FOIL

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] Petitioner refers to "Buy #1" as taken on March 28, 2014. (Compl. at 4). Plaintiff then refers to three separate drug sales - "Buy 1, 2, 3." The exhibits that plaintiff has attached to the complaint show that each photograph contains what appear to be drugs on a scale, which shows a particular weight. (Pl.'s Exs. 1-3). The scale is placed on a piece of paper which contains a date, a "Buy" number, and the type of drug. (*Id.*) Each exhibit is apparently the photograph of drugs from three different drug purchases. (*Id.*)

[3] The pages of the complaint are consecutively numbered at the bottom up to page 4. The court will refer to the rest of the pages of the complaint by the number assigned by the court's electronic filing system - CM/ECF.

3

request in July of 2016, and that on October 12, 2016, Records Access Officer Lt. Debra L. Benziger[4] told plaintiff that her agency "did make available"[5] three 8x10 inch color photographs of the drugs, together with "an incident report" describing the three "Buys." (*Id.* & Pl.'s Ex. 4).

Plaintiff states that he was "not interested" in what Lt. Benziger had to offer because the 8x10 inch photographs were apparently duplicates of photos that plaintiff already had, "just in a bigger size." (*Id.*) Plaintiff states that he appealed Lt. Benziger's decision. On December 19, 2016, plaintiff received a letter from defendant Lt. Col. Scott A. Wilcox. (Pl.'s Ex. 5). Lt Wilcox affirmed Lt. Benziger's determination. (*Id.*) Lt. Wilcox told plaintiff that he could purchase two newly-requested photographs for $50 or that plaintiff could purchase a "contact sheet" with all three photographs on it for $25.[6] (*Id.* & Ex. 5). Lt. Wilcox also denied plaintiff's request for JPEG images of the photographs because production of the photographs in JPEG format could only be accomplished by burning copies onto a CD or DVD, possession of which by an inmate could be a violation of the rules governing contraband. (Pl.'s Ex. 5 at 2).

Plaintiff states that his mother gave him the money to purchase the materials, but

---

[4] Lt. Benziger is not a defendant in this action.

[5] Plaintiff apparently asked for a variety of materials, outlined in Lt. Benziger's letter. (Pl.'s Ex. 4 at 1). Some of the materials were exempt from disclosure, and some of the materials responsive to plaintiff's request were not located because "[a]ny records of this type we may have had would have met our criteria for purging and therefore have been destroyed." (*Id.*) The letter states that *one* 8x10 photo and the "Incident Report" would be forwarded to plaintiff when he sent a check for $40.00.

[6] The letter also states that plaintiff's appeal included reference to materials that were not in his original request. The letter indicates that a subsequent search failed to locate one of the newly-requested items. (Pl.'s Ex. 5).

4

does not specifically state that the money was sent to the agency at that time. (Compl. at 7). Instead, plaintiff sates that he made "another foil [sic] request to NYSP HQ in Albany NY." (*Id.*) Plaintiff states that Richard W. Lynch, Staff Inspector, told plaintiff that his request was being processed, and the documents would be available on August 28, 2018. (*Id.* & Pl.'s Ex. 6). When the materials did not arrive, plaintiff wrote letters on October 11, 2018 and October 28, 2018. (Compl. at 7 & Pl.'s Ex. 7). In his October 11 letter, plaintiff stated that Clinton Correctional Facility had purchased a CD/DVD player for the law library so that plaintiff would be allowed to obtain the JPEG materials. (Pl.'s Ex. 7 at 1).

Plaintiff states that, when he failed to obtain a response, on November 7, 2018, plaintiff wrote another letter, addressed to defendant George P. Beach, Superintendent of the New York State Police, informing him of the delay and asking him to "intervene" before plaintiff made a "formal complaint" to the Governor's office and before he filed an Article 78 proceeding.[7] (Compl. at 7 & Pl.'s Ex. 8). Plaintiff states that he received a letter dated November 9, 2018 from defendant Major Frank Keyser, indicating that the agency could not locate some of the records plaintiff's requested, and informing plaintiff of the appeal mechanism. (Pl.'s Ex. 9). Defendant Keyser also stated that the agency had not received payment for the items that were available to plaintiff. (*Id.*)

Plaintiff states that, in response to defendant Keyser's letter, plaintiff "disburst [sic]" $75 dollars from his account to purchase the "contact sheet" and the CD/DVD jpeg file. (*Id.*) Plaintiff wrote a letter to accompany the money, indicating what the payment

---

[7] Plaintiff apparently made another request on April 25, 2018. Plaintiff refers to both requests in his letter to defendant Superintendent George Beach. (Pl.'s Ex. 8).

5

was for. (Pl.'s Ex. 10). On January 10, 2019, defendant Keyser wrote to the plaintiff, acknowledging receipt of his payment and sending thee color photographs "concerning drug buys that occurred on March 28, 2014, April 28 and April 30, 2014. (Pl.'s Ex. 11). As stated above, the letter also references materials that were not provided and informed plaintiff of his right to appeal to the Records Appeal Officer. (*Id.*)

Plaintiff states that he sent two letters, both dated January 14, 2018. One letter was addressed to defendant Beach, and the second, to defendant Keyser complaining that plaintiff had not received the "requested" materials. (Compl. at 8 & Pl.'s Exs. 11, 12). In these letters, plaintiff accused the agency of "conspiring" and "suppressing" the contact sheet and JPEG photographs. (Pl.'s Ex. 11). Plaintiff insisted that he be sent the contact sheet or the CD/DVD containing JPEG images. (*Id.*) Plaintiff also sent an appeal, dated January 24, 2018 to the Records Appeal Officer. (Compl. at 8 & Pl.'s Ex. 13). Plaintiff returned the photographs to the agency. (*Id.*)

Plaintiff received a response to his appeal, dated February 14, 2019 from defendant Wilcox. (Compl. at 8 & Pl.'s Ex. 14). Defendant Wilcox denied plaintiff's appeal and returned the photographs to plaintiff. (Pl.'s Ex. 14). Defendant Wilcox further explained to the plaintiff that there was only one contact sheet,[8] that it contained all three photographs, and that each photo was on "1.5 inches square." (*Id.*) The contact sheet had been offered "as an alternative" to the three 8x10 photographs. (*Id.*)

Plaintiff states that, in response to the denial of his appeal by defendant Wilcox, he sent two letters to defendant Wilcox, one letter dated February 25, 2019 and the second,

---

[8] In his appeal and his January 14, 2019 letters plaintiff referred to "contact sheets." (Pl.'s Ex. 13).

6

dated February 26, 2019. (Compl. at 8 & Pl.'s Ex. 15). In these letters, he tried to explain to defendant Wilcox that the correctional facility now allowed plaintiffs to view CD/DVDs, and that the size of the images on the contact sheet was "not his concern." (*Id.*) However, in plaintiff's second letter, he asked that the CD/DVD be sent to his mother's address. (Pl.'s Ex. 15 at 2).

On April 18, 2019, plaintiff wrote another letter to defendant Wilcox, indicating that nothing had been sent to his mother and attaching a June 3, 2010 Memorandum regarding the receipt by inmates of CD/DVDs. (Pl.'s Ex. 16). There are no other letters of appeal attached to the complaint, and there is no indication in this complaint[9] that plaintiff filed an Article 78 proceeding in New York State court to challenge the agency's decision.

Plaintiff has attached a letter from his former attorney, dated April 6, 2017, indicating that plaintiff was mistaken when he assumed that a photograph had been "deleted" from the attorney's file or "never obtained from the District Attorney's Office. (Pl.'s Ex. 17). Plaintiff's counsel withdrew from representing plaintiff when he requested to proceed pro se in his criminal case.[10] *See People v. Jackson*, 160 A.D.3d 1125 (3d Dep't), *lv. denied*, 31 N.Y.3d 1149 (2018). Plaintiff's former attorney told plaintiff that he was provided with copies of all photographs which the District Attorney produced,

---

[9] Below, the court will discuss the possibility of plaintiff filing an Article 78 proceeding. Whether plaintiff filed an Article 78 proceeding is not relevant to this court's decision.

[10] A reading of the Appellate Division's decision makes it clear that plaintiff had more than one attorney representing him prior to his election to proceed pro se. *See* 160 A.D.3d at 1125 (During pretrial proceedings, plaintiff was represented by three different attorneys, each of whom was relieved by the County Court for various reasons. Plaintiff then chose to represent himself and did so throughout the subsequent jury trial.) It is unclear which of the attorneys wrote plaintiff this letter.

7

including 48 JPEG files. (Pl.'s Ex. 17). In the letter, plaintiff's former attorney also states that plaintiff was provided a CD containing all of the JPEG files, that no JPEG file depicting Buy #1 was produced. In his April 6, 2017 letter, counsel enclosed the three photographs of the three drug purchases. (*Id.*)

The rest of the complaint is plaintiff's description of his criminal case and his theory regarding the photographs and why he believes the photograph labeled March 28, 2014 is "fraud evidence," and is "one of the factors that contributed to plaintiff's conviction." (Compl. at 9-10). Plaintiff claims that the documents being "withheld" by defendants "are potentially exculpatory material in violation of Brady." (Compl. at 10).

The complaint contains three claims: (1) defendants violated plaintiff's due process rights by withholding exculpatory evidence; (2) defendants violated plaintiff's equal protection rights by "conspiring to deprive plaintiff of life and liberty"; and (3) defendants "are in violation in failure to protect of a fundamental fairness of due process." (Compl. at 12). Plaintiff seeks only injunctive relief compelling "NYSP HQ to turn over the Documents." (*Id.*)

## III. Subject Matter Jurisdiction

### A. Legal Standards

Plaintiff brings this action under 42 U.S.C. § 1983. Section 1983 provides a right of action against defendants who, under color of state law, violate a plaintiff's rights, privileges, or immunities secured by federal statute or the United States Constitution. 42 U.S.C. § 1983. Section 1983 does not itself establish a federally protected right, it creates a cause of action to enforce federal rights created elsewhere. *Albright v. Oliver*,

510 U.S. 266, 271 (1994). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." *Pettus v. Ercole*, No. 19-CV-5893. 2019 WL 5863983, at *1-2 (E.D.N.Y. Nov. 8, 2019) (citing inter alia *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000)).

B. **Application**

1. **FOIL**

Plaintiff in this case appears to be challenging only the alleged "refusal" of the defendants to turn over materials under the New York State FOIL. His request for relief is purely injunctive and asks the court to "order" defendants to turn over documents. Even though plaintiff's causes of action mention due process and equal protection, the essence of plaintiff's complaint is an attempt at appealing the New York State FOIL decision. Section 1983 does not provide a claim for "violations arising solely out of state law." *Driscoll v. Townsend*, 60 F. Supp. 2d 78, 81 (S.D.N.Y. 1999).

"Elevating a state-mandated procedure to the status of a constitutionally protected liberty or property interest, would make process an end in itself rather than a requirement whose constitutional purpose is to protect a substantive interest in which the individual has a claim of entitlement.' " *Henry v. Doe*, No. 19-CV-10153 (CM), 2020 WL 209091, at *8 (S.D.N.Y. Jan. 10, 2020) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (quoting *Sealed v. Sealed*, 332 F.3d 51, 57 n.5 (2d Cir. 2003)). In *Doe*, the court held that a violation of New York FOIL, N.Y. Pub. Off. L. § 87, et seq., does not, standing alone, support a § 1983 claim. *Id*. *See also Rankel v. Town of Somers*, 999 F.

9

Supp. 2d 527, 535 (S.D.N.Y. 2014) (plaintiff's claims that the town refused to respond to FOIL requests involve state law, not federal constitutional violations); *Collins v. City of New York*, 923 F. Supp. 2d 462, 474 (E.D.N.Y. 2013) (a violation of NYS FOIL does not, standing alone, support a section 1983 claim). An allegedly wrongful denial of a FOIL request is a matter of state law that is addressable in an Article 78 proceeding. *Henry, supra* (citing inter alia *Hudson v. Cnty. of Dutchess*, 51 F. Supp. 3d 357, 370-71 (S.D.N.Y. 2014)).

Although plaintiff shows the court that he wrote many letters and appealed to the Records Appeal Officer, plaintiff does not allege in this action that he ever brought an Article 78 proceeding in New York State court to appeal defendant Wilcox's decision, allegedly refusing to produce the materials plaintiff requested.[11] In any event, this court is without subject matter jurisdiction to decide a New York State FOIL claim, and plaintiff's complaint may be dismissed.

### 2. **Potential *Brady* Claim**

The court notes that in plaintiff's complaint, he mentions that the material in question would establish a constitutional violation under "*Brady*" because the materials are allegedly "exculpatory." Although plaintiff does not ask for release[12] or damages[13] in

---

[11] In the documents associated with plaintiff's currently-pending application for habeas relief, there is discussion of an Article 78 proceeding which apparently was denied after plaintiff's first attempt, because he failed to properly serve the respondent. (*See* Dkt. No. 8 at 2, 4, 5 in *Jackson v. Capra*, No. 9:19-CV-1542).

[12] Release may only be obtained through a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and plaintiff already has a pending habeas corpus application.

[13] As stated above, plaintiff is only requesting production of the allegedly improperly withheld materials. This is further evidence that plaintiff is only seeking to overturn the FOIL request.

10

this complaint, and it does not appear that he is raising *Brady* as a reason to disclose the alleged material, this court will discuss this potential basis for plaintiff's claim.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a section 1983 action, seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a **criminal conviction** unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.S. at 486-87.

Under *Brady* and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), "'[t]he government has a duty to disclose all material evidence favorable to a criminal defendant.'" *Vilar v. United States*, No. 17-CV-1491, 2019 WL 3537052, at *7 (S.D.N.Y. Aug. 2, 2019) (quoting *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 161 (2d Cir. 2008)). There are three elements in a *Brady/Giglio*: "(1) the evidence at issue must be favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence must have been suppressed by the government, either willfully or inadvertently; and (3) prejudice must have ensued." *Id.* (citing *United States v. Douglas*, 525 F.3d 225, 244–45 (2d Cir. 2008) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). A determination that *Brady* has been violated would affect the validity of the conviction. Thus, in this plaintiff's case, to the extent that the complaint could in any way be interpreted as attempting to raise a *Brady* claim, it would be barred by *Heck*.

In *Collins, supra*, plaintiff also claimed that the FOIL defendant's conduct violated FOIL and *Brady*. 923 F. Supp. 2d at 473. The court considered the *Brady* issue after finding that the FOIL claim did not confer section 1983 jurisdiction in federal court. *Id.* at

11

473-74. The difference in *Collins* was that Mr. Collins's conviction had already been reversed when a federal court issued a writ of habeas corpus, "ordering dismissal of the indictment and his immediate release." *Id.* at 466. Mr. Collins was seeking damages, not injunctive relief.

In this case, plaintiff's criminal case has ***not*** been overturned or called into question by a petition for habeas corpus. Plaintiff has a habeas corpus action currently pending in this court in which he does raise the failure to disclose documents.[14] *Jackson v. Capra*, No. 9:19-CV-1542 (Dkt. No. 1 at ¶ 12 - Ground One). Although he does not specifically mention *Brady* in his first Ground for Relief in his habeas petition, in the supporting facts, he discusses his FOIL request and states that "Lt. Col. Wilcox has refuse to disclose[] these documents to the petitioner possibly exculpatory evidence and the petitioner has been deprived to file a 440.10 to the State Court to exhaust remedies." (*Id.*) To the extent that any *Brady* issue may be discussed, or considered at all, it would be in plaintiff's pending application for writ of habeas corpus.

## IV.  Appointment of Counsel

### A.  Legal Standards

There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically

---

[14] The court notes that on February 6, 2020, the Honorable David N. Hurd gave the plaintiff/petitioner an opportunity to amend his habeas petition. (Dkt. No. 8 in 9:19-CV-1542). Mr. Jackson attempted to amend his petition. (Dkt. No. 5). Plaintiff's "motion" was denied pending a proper motion to amend and clarification of other issues. (Dkt. No. 8). The court notes that in his application for habeas relief, he noted that the Article 78 proceeding was part of the exhaustion of state remedies process. (*See* Dkt. No. 8 at 4-5) ("Jackson seeks a stay of the petition while the Article 78 petition concludes so that he may properly exhaust his false evidence and tampering claims.")

provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

In addition, generally, before the court even considers the *Hodge* factors, the law requires that plaintiff demonstrate to the court that he has sought to obtain pro bono counsel on his own by submitting letters from the attorneys that he contacted which have

13

declined to take his case. *Cooper v. Sargenti*, 877 F.2d at 173-74 (Plaintiff must demonstrate by correspondence that he received from attorneys who declined to represent him).

   B.   **Application**

Because the court is recommending dismissal for lack of jurisdiction, any motion for appointment of counsel would be denied as moot at this time.  Plaintiff has just filed this action, and even if the court were not recommending dismissal for lack of jurisdiction, plaintiff's motion for counsel would be premature. In addition, plaintiff in this case has failed to submit letters showing that he attempted to obtain an attorney on his own.  Thus, the court will deny plaintiff's motion for appointment of counsel.

   **WHEREFORE**, based on the findings above, it is

   **ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 3) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

   **RECOMMENDED**, that the complaint be **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION**, and it is

   **ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 5) is **DENIED AS MOOT.**

   Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 21, 2020

Hon. Andrew T. Baxter
U.S. Magistrate Judge